CHRISTIAN BROSCHART and Others, Plaintiffs, *v.* THE CITY OF NEW YORK, Defendant.

City Court of New York, Bronx County, March 5, 1938.

*Sidney Sugerman*, for the plaintiffs.

*William C. Chanler, Corporation Counsel [Robert H. Schaeffer* of counsel], for the defendant.

ADLERMAN, J. The Appellate Division in this Department recently held that the sheriff of Bronx county, because of his duties in connection with the administration of justice "too well known and too numerous to mention," comes specifically within the exception contained in chapter 637 of the Laws of 1932 (the O'Brien Economy Act) exempting the salaries of officers and employees in the Supreme Court from the reductions otherwise authorized thereby. (*Hanley* v. *City of New York*, 250 App. Div. 552.) On appeal to the Court of Appeals that decision was unanimously affirmed, without opinion (275 N. Y. 482). While an affirmance by the Court of Appeals without opinion does not necessarily adopt the opinion below in its entirety (*Comm. Public Welfare* v. *Jackson*, 265 N. Y. 440), the amount of the plaintiff's salary recovery which was fully

affirmed clearly demonstrates that the ground of the Appellate Division's decision herein mentioned was necessarily approved thereby. This action is now brought by the under sheriff, ten deputy sheriffs, the cashier and chief clerk in the office of the sheriff of Bronx county to recover from the city of New York the aggregate of the reductions made in their salaries by the city during the years 1933 to 1937, which reduced salaries were accepted by the plaintiffs under protest. The city counterclaims for overpayments made to the plaintiffs other than McGuire during the year 1932 and for overpayments made to the latter in 1934. The amounts of salary of all the plaintiffs were fixed by the State Legislature in chapter 738 of the Laws of 1920. Both sides move for judgment on the pleadings.

The corporation counsel contends in the city's behalf that these plaintiffs perform their duties under the direct and immediate supervision of the sheriff rather than the courts and are, therefore, county employees not entitled to immunity from pay reduction under the Economy Act. In so far as the cashier and the chief clerk of the sheriff's office are concerned, that contention appears to be sound. Whether or not we may consider applicable to them the distinction between employees " in " the courts and " of " the courts, which was drawn by Mr. Justice CONWAY in *Bane v. City of New York* (167 Misc. 228), the fact remains that neither the sheriff's cashier nor his chief clerk perform such duties in connection with the administration of justice as should reasonably embrace their salaries within an obvious legislative intent to protect our judicial system from interference by a municipal corporation. (Compare *Albert v. City of New York*, 250 App. Div. 555; affd., 275 N. Y. 484.)

The under sheriff and the deputy sheriffs are entitled to that immunity. Counsel for the plaintiffs has very learnedly discussed in his brief the relationship between a sheriff and his general deputies to show that in both an historical and very practical sense the sheriff and his deputy are one and the same officer. That contention is sound. Suffice to say for the purpose of this opinion that it receives statutory support in section 9 of the Public Officers Law which provides occasions wherein a deputy shall perform the full functions of the sheriff. Inasmuch as the statute existed prior to the enactment of the Economy Act, not to mention the time-honored decisions classifying a deputy with the sheriff for so very many purposes, the Legislature must have had in mind the technical classification of sheriffs with deputy sheriffs when the Economy Act was passed and our appellate courts have held that the Legislature included the sheriff of Bronx county within the immunity provided in that act.

(*Hanley* v. *City of New York, supra.*) The legislative intent is now clear. To exclude from that immunity the under sheriff and the ten deputy sheriffs would be to disregard the Legislature's purpose to protect not only the judiciary but also those officers who enforce judicial mandates.

This exemption does not include the furlough reductions imposed upon the plaintiffs during the year 1934 pursuant to chapter 178 of the Laws of 1934 (the LaGuardia Economy Act). The immunity conferred in that statute is expressly limited to the justices of the courts. The city is entitled to judgment on the pleadings dismissing the entire complaints of the cashier and chief clerk, and is also entitled to judgment dismissing the claims of the other plaintiffs for furlough reductions. The under sheriff and the ten deputy sheriffs are entitled to judgment on the pleadings for the amount of all other deductions from their mandatory salaries during the years 1933 to 1937.

We come now to a consideration of the city's counterclaims. Chapter 738 of the Laws of 1920, amending the Bronx County Act (Laws of 1912, chap. 548), fixed the salaries for the offices held by these plaintiffs at definite amounts therein stated. The plaintiffs urge that the statute should be construed to mean " not less than " the amounts specified. The city urges a construction of " no more and no less than " these salaries. There is no ambiguity here. The statute means precisely what it says. The salaries in each case are to be paid by the city of New York in the amounts stated — no more and no less. The employees are protected against a diminution and the taxpayers are protected against an increase. Nevertheless these salaries were increased by the city some years ago under a mistake of law. In 1924 the State Legislature enacted the Home Rule Law as authorized by an amendment of the State Constitution. The following year the municipal assembly of New York city enacted Local Law No. 2 (Local Laws 1925, p. 88) increasing, among others, the salaries of these plaintiffs above the amounts fixed by the State Legislature in 1920 and such increased salaries were paid to all of them other than the plaintiff McGuire, until 1932 when they were reduced below those amounts by the city after the enactment of the O'Brien Economy Act. McGuire, the under sheriff, was appointed to his office in 1934 and during that year he received a larger salary than that fixed by the State Legislature. For the subsequent years his salary was reduced likewise. The city makes no claim for overpayments prior to 1932 since recovery would be barred by the six-year Statute of Limitations.

The city's counterclaims proceed on the theory that the municipal assembly's passage of Local Law No. 2 was ineffective to increase the plaintiffs' salaries as a matter of law, despite the home rule legislation (Laws of 1924, chap. 363), in view of the mandatory provisions of the Laws of 1920. Such action was a usurpation of power by the municipality since it affected the salaries of persons not engaged in the government of affairs of the city of New York. (*New York City Employees' Retirement System* v. *Eliot,* 267 N. Y. 193.) The power to fix salaries, like the power to tax, is a power to destroy. The State Legislature created these offices, prescribed the duties of their incumbents and specified the salaries to be paid. Without enabling State legislation the city could no more change those salaries than it could abolish the offices. *Quære,* having voluntarily paid the increased salaries under a mistake of law, can the city now recover the overpayments? If this were a suit between two individuals there could be no recovery. But a municipality cannot be so prejudiced by the action of its officers and employees in a voluntary payment of public funds. (*New York Tel. Co.* v. *Board of Education,* 270 N. Y. 111; *New York City Employees' Retirement System* v. *Eliot,* 267 id. 193.) The doctrine enunciated in those decisions is binding upon the facts presented in the cases of the under sheriff and the ten deputy sheriffs. As to them the city's motion for judgment on its counterclaims is granted and their overpayments will be setoff against their recoveries for deductions. In the case of plaintiff McGuire, his furlough deduction in 1934 figured at the rate of his mandatory salary should be added to his overpayments in computing the city's setoff. The cases of the cashier and chief clerk present equities analogous to those considered in *Cox* v. *Mayor* (103 N. Y. 519). Those plaintiffs have been allowed no recovery here for their salary reductions. The overpayments made to them were out of moneys lawfully raised by taxation for the purpose of paying their salaries at the then increased rates. In discussing the *Cox* case the Court of Appeals in *New York City Employees' Retirement System* v. *Eliot (supra)* said (at p. 202): "The court stated that under the circumstances it would be a hard measure of justice to compel the defendant at that late date to restore the money. In affirming the General Term it did not discuss the principles of law involved. Insofar as the decision is in conflict with our conclusions here we decline to follow it." The equities in the *Cox* case, like those presented in the case of the cashier and chief clerk, were not present in the *Eliot* and *Telephone* cases. The Court of Appeals explicitly distinguished the *Cox* case on that ground. If our highest State court had intended to overrule the *Cox* case completely without regard to the equities therein mentioned, it is only fair to assume

that it would not have so referred to those equities in the two later cases here cited. On the facts presented by the city's claim against the cashier and chief clerk it seems that *Cox* v. *Mayor (supra)* is still the controlling precedent and judgment is directed dismissing those counterclaims.

Settle order on notice in conformity with this decision; thirty days' stay of execution from the date of service of a copy of judgment and notice of entry.