OPINION OF THE COURT
Alfred J. Weiner, J.
This CPLR article 78 proceeding, in the nature of mandamus, was initiated to compel respondents to eliminate alleged overcrowded conditions at the Rockland County Jail.
The original petition named only Lewellyn George as petitioner. The respondents originally named were Thomas Goldrick, the Sheriff of Rockland County (in his individual and official capacity), Elijah Coleman, the Superintendent of the jail (in his individual and official capacity), John Grant, the County Executive of Rockland County (in his individual and official capacity) and Thomas A. Coughlin, III, Commissioner of the New York State Department of Correctional Services (DOCS).
Petitioner has made an application to join William G. McMahon, Chairman of the New York State Commission of *260 Correction, as a necessary party and for the acceptance of the first amended petition. All parties have consented to this application.
Petitioner has also made an application to serve a second amended petition, naming, as intervening copetitioners, Derrick McMullen, John Forschner, Julio Zoimbrana, Doel Borgos and George DeGraw, who are (or were) inmates of the jail.
It is patent that inmates in jails and prisons have standing to bring legal proceedings to challenge the conditions of their confinement which allegedly violate their constitutional and statutory rights. A person may be permitted to intervene when that person’s claim has a common question of law or fact with the claim already raised in the main action. (CPLR 1013.) The intervenors herein clearly share the same situation which has given rise to petitioner George’s claim; that they are (or were) inmates of the jail. Allowing intervention will not cause surprise or undue delay and will not prejudice the rights of any party to the action. Accordingly, the court holds that the application to intervene and to serve the second amended petition is granted.
An additional application was made, on behalf of all jail inmates, to litigate this proceeding as a class action. Respondents oppose this application on the grounds that petitioner lacks standing, and that petitioner is not a part of the class he seeks to be certified and to represent.
In order to grant an application for class certification, the five prerequisites set forth in CPLR 901 must be satisfied: 1) the class which is hereby defined as consisting of all those who are (or were) inmates at the jail from the commencement of this proceeding until its determination is so numerous that joinder of all members is impracticable; 2) there are common questions of law or fact which predominate over any questions affecting only individual members; 3) the claims of the representative petitioners are typical of the claims of the class; 4) the petitioners will fairly and adequately protect the interests of the class; and 5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The court finds that these five prerequisites set forth in CPLR 901 have been satisfied.
There would be7no advantage to any party from a multiplicity of lawsuits and it is inconceivable that any member of the class would object to the prosecution of this matter as a class action. (CPLR 902.) There is no need to give notice of this *261 proceeding to the members of the class since notice is not necessary to protect the interest of the represented parties. (CPLR 904 [a].)
It is also irrelevant that petitioner, George, is no longer incarcerated in the jail and that the intervening petitioners have also been released or transferred elsewhere. In such a case, where individual petitioners (prisoners) may be moved before a petition may be heard, but the general conditions of incarceration complained of undoubtedly may persist, the matter is not rendered moot, and the class action may continue. (Bell v Wolfish, 441 US 520, 526; Gerstein v Pugh, 420 US 103, 110.) Accordingly, the application for class certification by petitioner, George, and the intervening petitioners is granted.
Petitioners further seek the transformation of this article 78 proceeding in the nature of mandamus to a declaratory judgment action (CPLR 3001, 103 [c]). Mandamus is a drastic remedy and is granted only where the duty to be performed is positive and not discretionary, and the right to its performance is so clear as not to admit reasonable doubt or controversy. (Matter of Burr v Voorhis, 229 NY 382.) The official conduct sought to be compelled must be ministerial in nature, nondiscretionary and nonjudgmental, and based upon a specific statute mandating performance in a specific manner. (Matter of Grisi v Shainswit, 119 AD2d 418, 420.)
It does not appear that petitioners’ case lies in mandamus, but rather primarily in a declaration whether Federal and State constitutional rights of due process and to be free from cruel and unusual punishment have been violated. Together with a declaration of the rights of the parties, the court may grant whatever other relief is appropriate. (Silverstein v Continental Cas. Co., 23 AD2d 801, affd 17 NY2d 845.) Therefore, this proceeding is deemed a declaratory judgment action.
Concerning the merits of this application, petitioners allege that the male population of the jail was allowed to exceed 73 and the female population to exceed 12 in contravention of the applicable rules and regulations governing maximum prisoner capacity promulgated by the New York State Commission of Correction (9 NYCRR part 7040); that this condition has existed on a regular basis since November 1986, with the average number of male inmates housed in the jail in the final three months of .1986 being 105; that the jail’s chapel and isolation cells were used to house inmates and that two *262 inmates were placed in cells designed to accommodate one (double-celling); and that all inmates in the jail were subjected to intolerable conditions of overcrowding and cruel and unusual punishment and loss of their right to privacy in violation of their constitutional rights and the applicable State rules and regulations. Additionally, at least 10 inmates who were sentenced to the jail have been transferred to serve their terms of incarceration at the Erie County Jail and, consequently, have virtually been deprived of visitation rights and telephone privileges.
The county respondents do not dispute petitioner’s contentions that the jail population has been in excess of the rules and regulations promulgated by the New York State Commission of Correction; that double-celling exists in the jail; that the chapel and isolation cells have been utilized to house inmates, and that inmates have been transferred to other jails, where possible, to alleviate the overcrowded conditions.
The county respondents contend that the allegations of overcrowding do not amount to a constitutional violation of petitioners’ rights thereby precluding the granting of the application. They also contend that the present overcrowded conditions will be eliminated since the County of Rockland is now constructing a new facility which will accommodate 168 inmates and which is scheduled for completion in early 1988. Furthermore, these respondents are making attempts to temporarily alleviate the overcrowding by reviewing the feasibility of an early opening of a wing of the new jail and using a temporary facility to accommodate prisoners until the new jail is completed.
Overcrowding, in and of itself, is not a violation of the 8th Amendment prohibition against cruel and unusual punishment for those persons incarcerated upon conviction for crimes (sentenced prisoners). Cruel and unusual punishment includes not only barbarous physical punishment, but also the unnecessary and wanton infliction of pain and the imposition of penalties grossly disproportionate to the severity of the crime. (Rhodes v Chapman, 452 US 337.) Among unnecessary and wanton infliction of pain are those that are totally without penological justification. (Gregg v Georgia, 428 US 153.) The denial of medical care is cruel and unusual punishment since it has no penological purpose and can result in pain or physical torture. Furthermore, those conditions that deprive inmates of the minimal civilized measure of life’s necessities *263 could be cruel and unusual punishment. (Estelle v Gamble, 429 US 97.)
The allegations contained in the petition do not indicate barbarous physical punishment, nor the unnecessary and wanton infliction of pain and the imposition of penalties grossly disproportionate to the severity of the crime. Overcrowding may be harsh and uncomfortable, but this does not make it cruel and unusual and, therefore, unconstitutional. Accordingly, there is no cruel and inhuman punishment against these sentenced prisoners and their cause of action is dismissed.
For those held in prison awaiting trial (pretrial detainees) overcrowding, in and of itself, is also not a deprivation of Federal due process rights. The test is whether the conditions of confinement imposed on detainees amount to punishment. Loss of freedom of choice and loss of privacy are inherent incidents of confinement in a jail or prison. If the conditions of confinement are not excessive as to amount to punishment and serve some legitimate management need or purpose, they will be upheld. (Bell v Wolfish, 441 US 520, supra.) Furthermore, there is no Federal constitutional right of privacy. (Block v Rutherford, 468 US 576.)
The allegations raised by petitioners do not amount to excessive conditions of confinement that result in punishment. Accordingly, the court finds that the cause of action by pretrial detainees alleging overcrowding in the jail must be dismissed.
Petitioners’ allegations that the jail population has been allowed to exceed the maximum capacity promulgated by the New York State Commission of Correction, enforcement of these standards is a matter for the Commission of Correction and not for the courts. A court may intervene only if it finds violations of constitutional dimension. Since no violations of constitutional dimension have been found, that cause of action is dismissed. (Jones v Beame, 45 NY2d 402; Powlowski v Wullich, 102 AD2d 575.)
The court finds there is no merit to the petitioners’ allegations insofar as they allege that the transfer of prisoners, who have been sentenced to serve terms of incarceration in the jail, to other county jails in the State, is a violation of constitutional rights.
Transfer to a substitute jail is authorized under certain conditions pursuant to Correction Law § 504 (2). Transferring *264 sentenced prisoners to other facilities because of overcrowding at the jail was recently upheld by the Appellate Division, Second Department. (Rose v Goldrick, 130 AD2d 564.) Accordingly, this cause of action is dismissed.
Petitioners further contend that inmates who have been sentenced to State prison ("State-ready” inmates) have not been transferred immediately, and their retention at the jail has contributed to overcrowding. Accordingly, petitioners are seeking an order directing respondent, Coughlin, to accept "State-ready” prisoners within 48 hours of sentencing.
CPL 430.20 (1) requires that "[w]hen a sentence of imprisonment is pronounced * * * the defendant must forthwith be committed to the custody of the appropriate public servant and detained until the sentence is complied with.”
However, enforcement of this statutory mandate is a matter not for the court except if it finds violations of a constitutional dimension. (Jones v Beame, supra; Powlowski v Wullich, supra.)
Based upon the court’s finding that the allegations of overcrowding do not amount to a constitutional violation, this cause of action is also dismissed.
Accordingly, petitioners’ application is denied in its entirety.